## M. BURNS & others, *ex parte.*
### October Term, 1872

CORPORATION, POWER TO CREATE.—The creation of corporations is a high prerogative of government, vested by the Constitution of 1870 in the Legislature, to be exercised by general laws, and cannot be delegated to the Courts.

SAME.—The act of the Legislature of 1871, ch. 54, so far as it undertakes to clothe the Courts of Chancery of this state with power to create corporations, or to confer upon corporations any power not granted by a general law in conformity with Art. XI Sec. 8 of the Constitution of 1870, is unconstitutional and void.

SAME — POWER TO ORGANIZE.— The act, so far as it undertakes to authorize the Courts of Chancery to organize corporations under general laws passed in conformity with the Constitution. is valid. but the power thus conferred is ministerial, not judicial.

Rules, No. 7282—*M. Burns* and others, *ex parte* petition.

Rules, No. 7283—*M. Burns* and others, *ex parte* petition.

Rules, No. 9349—*John Lumsden* and others, *ex parte* petition.

THE CHANCELLOR :—These are applications for incorporation.

The first prays for a decree incorporating the petitioners by the name of the "Tennessee Chair and Furniture Manufacturing Company," with such general powers and privileges as may be necessary to carrying out the objects and purposes of said company, and among others to have and use a common seal, to purchase and hold real and personal property, and to acquire the same by purchase, devise or gift for the use of said company, etc., enumerating many of the usual powers belonging to private corporations, and then proceeds : " And finally for all the powers and authorities belonging or attaching to said private corporations of a like nature as specified in sections 1474 to 1497 inclusive of the Code of Tennessee, and for all such other and further powers as to your Honor may seem fit, and the objects and purposes of said company may require."

The petitioners in the second petition ask to be incorporated by the name of the "Nashville Cotton Seed Oil Company, and their petition is a substantial copy of the preceding.

The petitioners in the third petition ask to be incorporated with all the powers and privileges of a corporate body, under the name and title of "The Citizens' Gaslight Company of Nashville," for the purpose of manufacturing and vending gas. The petition states that the purposes and objects of the corporation proposed, and the corporate rights prayed for, are set forth and shown in a copy or draft of the decree of incorporation, which is attached to and made a part of the petition. The prayer is that the court grant the charter of incorporation thus submitted, "and in case your Honor be of the opinion, that in any respect the provisions of said proposed charter are illegal or improper, that so far as, and so near as may be, the prayer of petitioners for said charter be granted, and their charter decreed to them accordingly."

The decree attached to this petition divides the proposed charter of incorporation into sections, in the usual form of a legislative charter.

The first section incorporates the petitioners by the name prayed, with a capital of $100,000, which may be increased to $200,000, divided into shares of $50 each, with power to sue, contract, make by-laws, etc., and have succession for the period of 99 years.

Section 2. Be it further enacted, That all the rights, privileges, powers and restrictions contained in sections second, fourth, fifth, sixth, seventh, eleventh and twelfth, of an act passed November 21st, 1849, incorporating the Nashville Gas Light Company, not inconsistent with the first section of this decree, shall and are hereby declared to apply to the Citizens' Gas Light Company of Nashville, as fully and completely as though the same were herein fully set forth and incorporated.

Sections 3, 4 and 5 provide for the opening of books for subscription to the capital stock, the election of officers, the

mode of voting, the transfer of shares, etc., in a manner unexceptionable, but not authorized by any specific provisions of the law regulating the formation of private corporations.

All of these petitions, but especially the last, go upon the idea that the court of chancery is clothed with the power to grant charters of incorporation in precisely the same way, and to the same extent, as the legislature itself could do, and was in the habit of doing previous to the adoption of the new constitution of 1870. In other words, that the power of the court extends to the creation, and not merely to the organization of corporations. The impression seems to prevail that the persons desiring to . be incorporated are at liberty to fix up a charter to suit themselves, and to cull out from the provisions of the Code and from former acts of incorporation, such rights and privileges as they may think will best answer their purposes. Neither the legislature nor the court is supposed to have any voice in the matter.

It is obvious that it becomes a question of serious importance to know whether this practice is correct. For, if it be not, such charters are, even if decreed by the court, clearly void, and will be no protection to those who become parties to the association. The stockholders, in that event, instead of being members of a corporation, and liable only to the extent of their stock respectively, are in fact, partners in a joint stock company, and each is liable for the whole debts of the association, as in the case of ordinary partnership. I propose, in these, the first applications brought before me, carefully to examine the subject, and to see whether the general impression which seems to prevail, outside of the profession certainly, and to some extent inside of it also, is well founded. If it be, then the state is in the anomalous position, that whereas before the new constitution it had one legislature to grant and regulate charters of incorporation, it now has, under a constitutional provision that was intended to prevent the formation of corporations with special charters, twelve legislatures, there being that number of chancery districts, authorized to grant charters of incor-

poration, either according to the wishes of the applicants, or the unlimited discretion of the Chancellor for the time being. Such a condition of affairs is somewhat startling, to say the least of it, and could scarcely have been in the contemplation of the members of the constitutional convention of 1870.

I regret exceedingly that I have not had the aid of legal argument upon the question involved, before entering upon the investigation. It was my intention to require argument from the counsel filing such petitions. But it so happens, that the counsel who files the first two petitions is willing to take a charter under the provisions of the Code, and declines to argue the question. And the third petition is presented by one of the petitioners in proper person. Under these circumstances, I am compelled to rely upon my own unaided examinations, and to argue out my own conclusions.

On the 26th of February, 1856, under the state constitution of 1834, the legislature undertook to clothe the circuit courts of the state with authority to grant private charters of incorporation by an act published as ch. 254 of the printed acts of that session of the General Assembly, and entitled "An act to authorize the formation of companies, and regulate private and local affairs, and retrench the expenses of legislation." This act did expressly undertake to do what it is now supposed has been done under the new constitution. It provided that any number of persons, not less than three, might "associate themselves together for the purpose of pursuing or carrying on any branch or branches of manufacturing, mining, mechanical, chemical, or other business; for promoting education, science or art; for erecting ferries or mill-dams; for establishing fire insurance, savings, navigation, commercial or agricultural business; *or any other pursuit, business, or occupation, or calling, which may be lawfully carried on or engaged in, in this state, for private, social, public or municipal purposes.*" The act further expressly provided that the persons desiring to be incorporated might file a petition in the circuit court,

"where the principal office of the company is located or kept," setting forth, among other things, "the powers, duties, liabilities, rights and privileges" sought, and if it should appear to the court that these provisions were not repugnant to the provisions of the act, or to the constitution and laws of the state, and the United States, the court was to order the company to be formed accordingly. If the courts could be clothed with legislative authority to create corporations, this act was certainly broad enough for all practical purposes.

This "extraordinary act" as it was very appropriately styled by Judge McKinney, came up for judicial consideration by our supreme court, and was passed upon in *The State* v. *Armstrong*, 3 Sneed, 634. It was there held, in an able and elaborate opinion, that the power to grant charters of incorporation is vested by the constitution of this state in the legislature alone, to be exercised as a high and responsible trust, and only in cases where it may be deemed expedient for the public good; that it is among the powers, the exercise of which is expressly reserved to the legislature itself, and one which cannot be delegated, and consequently, that the act in question was unconstitutional and void.

The conclusion was logically reached by considering that, by the express terms of the state constitution, all authority is inherent in the people; that, by the same instrument (Article II, Section 1), the powers of government are divided into three distinct departments, the Legislative, the Executive, and the Judicial; and by Article II, Section 2, it is further provided that no one of these departments "shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed and permitted;" that the power of granting charters of incorporation was a high government prerogative, expressly vested in the legislature; and that, under the constitution, there could be no such thing as the devolution of power by one department upon another, unless by special authority of the constitution itself, and none such exists in reference to the power

in question. The delegation of sovereign power is, in itself, an act of sovereignty, and can only be made by the constituent body in which the original power resides, or by its express authority.

The principle upon which the conclusion rests, that legislative power cannot be delegated unless by special authority of the constitution itself, is one universally recognized by American courts and jurists. See Cooley on Const. Limit., p. 116 *et seq.*, and cases cited.

By the act of 1849, ch. 17, the legislature of this state passed a general law for the incorporation of towns, cities and villages, pointing out the mode in which it should be done, by petition to the county court, and expressly defining and settling the powers and privileges granted to such incorporations. The validity of this act was brought in question in *Mayor and Aldermen of Morristown* v. *Shelton*, 1 Head, 24 ; the case of *The State* v. *Armstrong* being principally relied on in support of the objection. But the court held that this was a misconception of the previous case. " That case, they say, was correctly decided beyond all question. It was upon the act of 1856, ch. 254, by which the full and broad power to *create* corporations was given to the circuit courts, and was, therefore, held to be in violation of the constitution. Not so in this act. It gives the county court no power on the subject but to record the petition for the benefit of a perfect and complete charter, and designate the boundaries to which it is to apply, that is, to prescribe the corporate limits of their town. *It cannot add to, or diminish the powers, privileges and immunities granted, nor make the least change of any kind in the charter.* The legislative will is fully declared in the act, *and nothing is left to the court but to locate and apply it to any community who may petition for it, and bring themselves within its provisions.* This is very different from the act of 1856, by which the extent and character of the powers given, and the particular objects of the corporation *were to be fixed by the court*, or rather, in effect, *the wishes and desires of the applicants in*

*this respect ratified by the court.* That was as palpably in conflict with the constitution, as this is in conformity with it."

" The object," adds the court, " of the legislature was to save the great waste of time and money consumed in the making and printing separate acts for the incorporation of the thousand towns and villages that might and would spring up in this growing and prosperous state ; and we may suppose that the importance, so far as practicable, of producing uniformity in the municipal powers and privileges of the citizens and corporate authorities of all the towns, had its influence upon them. *This would .certainly be desirable, and is a strong consideration in favor of the policy of the act.*"

" This act," the court continues, " is nothing different in principle, in reference to this objection, than what was called the ' free banking law ;' and the constitutionality of that act has not, that we are aware, ever been questioned. If one is not obnoxious to the objection, the other is not. *That was a single complete charter of incorporation which might be adopted by a thousand companies, and constitute them bodies corporate and politic for the purpose of banking, upon a compliance with its provisions.* This was to be done by application to certain state officers, and the performance of the specified conditions."

These two decisions cover the entire subject. An act of the legislature, which undertakes to delegate to the courts the power of *creating* corporations, is unconstitutional and void. While an act which defines the rights, powers and immunities of corporations, and leaves to the courts or to " certain state officers " the duty of *organizing*, is valid.

In this state of the law, the constitution of 1870 is adopted, which contains all the provisions of the constitution of 1834, referred to and commented on in *State* v. *Armstrong*, with one single modification. Art. XI, Sec. 7, of the constitution of 1834 was in these words : " The legislature shall have no power to suspend any general laws for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land ;

nor to pass any law granting to any individual or individuals rights, privileges, immunities or exemptions other than such as may be, by the same law, extended to any member of the community who may be able to bring himself within the provisions of such law ; *Provided always*, the legislature shall have power to grant such charters of incorporation as they may deem expedient for the public good.''

The new constitution of 1870, Art. XI, Sec. 8, is a literal copy of the foregoing, down to the proviso, which is omitted, and its place is supplied as follows : '' No corporation shall be created, or its powers increased or diminished by special laws ; but the general assembly shall provide by general laws, for the organization of all corporations hereafter created, which laws may at any time be altered or repealed ; and no such alteration or repeal shall interfere with, or divest, rights which have become vested.''

How it could have been supposed that this change in the last clause of the section had worked a change in the governmental prerogative of *creating* corporations, it is difficult to imagine. The change in the phraseology of the section is simply to bring the last clause into harmony with the first, and to carry into the constitution a provision making that general legislation, sustained by the supreme court in the *Mayor and Aldermen of Morristown* v. *Shelton*, imperative, which had previously been discretionary with the legislature. The old constitution sedulously provided for the equality of privileges to all citizens, coming within the provisions of the law, except in the case of corporations. The new constitution says there shall be no such exception. By the old constitution the legislature might *create* corporations by a special act. By the new constitution it can only *create* corporations by general law, and adds, '' The General Assembly shall provide, by general laws, for the *organization* of all corporations hereafter *created*.'' The power to *create* is still legislative, and cannot be delegated.

The act of January, 1871, ch. 54, under which these petitions are filed, was intended to provide for the mode of

organization, as well as to *create*, by defining the purposes of incorporations, and their powers, privileges and immunities. It is not, in all its parts, very carefully drafted, and some of its provisions seem amenable to the objections made to the act of 1856, ch. 254.

The first section provides that, "when persons in this state shall desire to be incorporated with the powers and privileges of a corporate body," they shall file a petition in the chancery court of the county in which the largest number of the petitioners reside, setting forth the purposes and objects of the corporation prayed for. Upon this petition, after publication in some newspaper in the state, notifying all persons to appear and show cause why letters of incorporation should not issue, the court is to proceed to an *ex parte* hearing of the matters of the petition at the first term after the filing of the petition; and upon evidence that publication has been made as prescribed in the act, and "it appearing to the court that the objects of the corporation prayed for are not in conflict with the laws of the land, nor detrimental to public interest or morals, the court shall so adjudicate and decree, which adjudication and decree shall be spread upon the minutes of the court, and shall enumerate such usual powers and privileges of corporate bodies as may be necessary to carry out the legitimate objects of said corporation." *Provided*, etc. * * * "*Provided further*, that chancery courts may alter, amend, and revise the charters of corporations created by said courts, or by act of the legislature, upon application in manner and form, and subject to the conditions and restrictions as heretofore prescribed."

The tenth section is in these words: "The chancery courts shall also have full power to incorporate private companies, which propose to carry on any local business confined in its locality to the limits of a single county, and whose capital stock is not over $200,000, upon the stockholders petitioning said court, setting forth the name proposed to be used, the name and residence of stockholders, the character of the business proposed to be carried on, as well as the

amount of capital stock proposed ; and if the court find that the business proposed be a legitimate one, and not hurtful to the public good, then letters of incorporation or charters shall issue which charters shall be registered in the Register's office of the county where issued, and where the business is to be conducted.''

Section 14 is in these words : ''When any corporation of any nature whatever, shall desire other powers and privileges than those conferred by the general provisions of this act, or the sections of the Code of Tennessee referred to in and re-enacted by this act, application may be made to the chancery court in and for the county in which the principal office of such corporation may be situated, in manner and form as prescribed in the first section of this act, and, upon hearing of the cause, the court may grant such privilege and general relief, in accordance with the principles of equity, and not in conflict with the constitutional rights of the citizens of this state, as said court may deem necessary and just in the premises, provided the applicant shall pay the costs of proceedings.''

These provisions, it must be admitted, bear a striking likeness to some of the provisions of the '' extraordinary act'' of 1856. They do, in the broad and unqualified language used, imply a power in the courts of chancery to grant such corporate privileges as it may see proper, ''in accordance with the principles of equity'' (whatever that may mean), necessary to carry out the legitimate objects of said corporation. They fairly admit also of the inference that persons may be incorporated for any purpose ''not in conflict with the laws of the land, nor detrimental to public interest or morals.'' Our citizens have, therefore, some grounds for supposing that the powers of the court are far greater than they are in reality.

Nevertheless, when these provisions are carefully analyzed, it will be found that they are not so sweeping as they at first appear. The first section confines the grant to '' such usual powers and privileges of corporate bodies as may be neces-

sary to carry out the legitimate objects of said corporation,"
and these are expressly restricted by the 4th section of the
act to the "powers and privileges," conceded by the Code
to private corporations in §§ 1474 to 1497 inclusive.
The second uses almost the same language and is, of course,
similarly restricted. And the last, besides being subject to the
same restrictions, makes the most important qualification of all
to the privileges to be granted, namely, "and not in conflict
with the constitutional rights of citizens of this state." Now,
as we have seen, Section 8 of Art. XI of the new constitution,
expressly forbids the concession of special privileges to
particular individuals, even in the form of charters of incor-
poration, not open to all other citizens who may bring
themselves within the law. It follows that any charter
granted by the court of chancery, if it had the power to
create corporations, to any one set of individuals for a cor-
porate purpose not conceded, by a general law, to all other
citizens who might bring themselves within it, would be
clearly unconstitutional and void. Upon these provisions,
therefore admitting, them to be valid, I could not grant char-
ters containing special provisions not authorized by a general
law, nor any provisions whatever not authorized by such
a law.

If the act of 1871 was intended to go further, it is, to that
extent, like the act of 1856, unconstitutional and void.

It is not necessary for me to decide whether this court can
incorporate for any purpose not specially mentioned in the
act of 1871, or in the provisions of the Code. Under the
tenth section of the act of 1871, quoted above, applications
of incorporation for "any local business" seem in order,
and all of our ordinary partnerships for ordinary business
purposes might be turned, if the section literally means what
it says, into corporations. My present impression is that it
is for the legislature to specifically designate for what specific
purposes and objects the high prerogative of incorporation
shall be granted, and that a charter by decree for a purpose
not thus distinctly designated would be void.

But this point need not now be decided, for all of these applications are for manufacturing purposes. Corporations for such purposes are expressly authorized both by the act of 1871, and by the Code, and their privileges enumerated. The act of 1871, section 4 provides, "that corporations created by the chancery court of this state for the purposes of manufacturing," etc., shall be "regulated and controlled," in the respects specified, as prescribed in §§ 1452 to 1466 inclusive, and their "general powers and privileges and liabilities" shall be the same as prescribed in the Code of Tennessee from §§ 1474 to 1497 inclusive. These are the only terms upon which the court of chancery is authorized to organize such corporations.

It follows from what I have said, that the prayer of the petitioners in these several applications cannot be granted as made. I have no power to incorporate the petitioners, in either case, with the specific provisions asked for. I can confer upon them no privileges other than those prescribed by the general law. Nor can I cull out, at the instance of the petitioners, some of the privileges conceded by the general law to the exclusion of others. I cannot, to use the words of the court in *Mayor and Aldermen of Morristown* v. *Shelton*, 1 Head, "add to or diminish the powers, privileges and immunities granted, nor make the least change of any kind in the charter," as prescribed by the legislature. To do so, would be to depart from the special authority under which I act, and would make the whole charter void. The petitioners must take the incorporation for the purpose of manufacturing in the exact words of the law, with all its restrictions as well as its privileges, "for better, for worse," and "may they live long and prosper."

In this view, there may be some little doubt whether the publication will correspond with the charter granted. The object of the publication, however, seems to have been intended to give notice to those who might wish to oppose the organization of petitioners. But if I am right in my construction of the law, the publication is a useless form, as,

in fact, it has proved to be in practice. If the petitioners bring themselves within the law, they are entitled to be "organized," and no person has the right to object. The privilege of the law is secured by the constitution, Article XI, Section 8, to all who bring themselves within it, if all the world object. And if they do not bring themselves within it, the incorporation would be a nullity. The publication is, therefore, a matter of form, not substance, and I will allow these petitioners to "organize" under the law, as hereinbefore explained, if they see proper.